**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**SCOTT MATTHEW MALONE**                                                    **PLAINTIFF**

**V.**                                                                         **NO. 3:15CV00096-JMV**

**COMMISSIONER OF SOCIAL SECURITY**                              **DEFENDANT**

<u>**MEMORANDUM OPINION**</u>

This cause is before the Court on Plaintiff's complaint for judicial review of an unfavorable final decision of the Commissioner of the Social Security Administration denying claims for a period of disability and disability insurance benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. The Court, having reviewed the administrative record, the briefs of the parties, and the applicable law, and having heard oral argument, is of the opinion that the decision of the Commissioner should be reversed and disability benefits should be awarded for the reasons that follow.

Procedural History

Plaintiff filed for Title II disability insurance benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 423 *et seq.*, on March 5, 2006,[1] and indicated that his disability began on July 31, 1996.[2] The Commissioner denied his application for DIB initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

---

[1] Plaintiff also applied for Supplemental Security Income benefits; however, that application was denied pursuant to an informal determination because Plaintiff informed the Agency he did not want to file the claim. Tr. 73.

[2] The Appeals Council denied Plaintiff's request for review for a prior application, making that claim's October 29, 1999 ALJ decision administratively final and binding. Benefits determinations that become final are *res judicata*. *See Califano v. Sanders*, 430 U.S. 99, 107-08 (1977); *Robertson v. Bowen*, 803 F.2d 808, 810 (5th Cir. 1986).

A hearing was held on March 25, 2009, and following the hearing the ALJ entered a decision on June 24, 2009, denying Plaintiff's DIB application. The Appeals Council denied Plaintiff's request for review on August 3, 2010, making the ALJ's June 2009 decision the final decision of the Commissioner.

Plaintiff filed an appeal of the Commissioner's decision before this Court in Cause No. 2:10-cv-163-DAS on September 27, 2010. Ultimately, U. S. Magistrate Judge David Sanders reversed and remanded the case to the Commissioner for further proceedings. Judge Sanders found references had been made to medical evidence that apparently had not been considered by the ALJ and that no decision should be made without obtaining and reviewing said evidence. Tr. 854-855. On remand, the Appeals Council vacated the final decision of the Commissioner and remanded the case to an ALJ for further proceedings, including, but not limited to, a new hearing. Tr. 858.

Accordingly, on July 23, 2013, Plaintiff appeared and testified at an administrative hearing, and counsel of record in this action represented him at that hearing. Also present and testifying was a vocational expert ("VE") and Plaintiff's father.

On August 26, 2013, the ALJ issued a decision denying Plaintiff's application. On April 13, 2015, the Appeals Council denied review of that decision. Thus, the ALJ's August 26, 2013, decision became the Commissioner's final decision and is subject to judicial review pursuant to 42 U.S.C. § 405(g).

Sequential Evaluation Process and ALJ Findings

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520. The burden rests upon the claimant

throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b). Second, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.10 (2010). 20 C.F.R. §§ 404.1520(d). Accordingly, if a claimant's impairment meets the requisite criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1525.

Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and/or mental demands of his past relevant work. 20 C.F.R. §§ 404.1520(e). If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner at step five to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he is capable of performing other work. 20 C.F.R §§ 404.1520(f)(1). If the Commissioner proves other work exists (in significant numbers in the national economy) which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

In this case at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from his alleged onset date of July 31, 1996, through his date last insured of September

3

30, 2001.  At step two, the ALJ found that Plaintiff's impairments of arthritis, obesity, asthma, depression, and posttraumatic stress disorder (PTSD) were "severe" impairments during the relevant time period.  At step three, the ALJ found that Plaintiff's impairments, or combination of impairments, did not meet or equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the additional restriction that Plaintiff can never climb ladders, ropes, or scaffolds, but may occasionally climb ramps and stairs, stoop, crouch, and kneel. Additionally, the ALJ determined Plaintiff should never crawl and must avoid even moderate exposure to environmental irritants such as fumes, odors, and gases.  The ALJ did not assign any mental limitations.

At step four, the ALJ determined that Plaintiff had no past relevant work.  And, finally, at step five the ALJ determined there was a significant number of sedentary jobs in the national economy that Plaintiff could perform through the date last insured.

Standard of Review and Legal Principles

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Substantial evidence has been defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

## Law and Analysis[3]

Plaintiff's Title II insured status expired on September 30, 2001. The Act is clear that a claimant who becomes disabled after the expiration of his insured status is not entitled to benefits. *See* 42 U.S.C. §§ 416(i)(3), 423(c); *Oldham v. Schweiker*, 660 F.2d 1078, 1080 (5th Cir. 1981). Thus, to be eligible for Title II disability insurance benefits, Plaintiff must establish that he became disabled on or before September 30, 2001. *See Ivy v. Sullivan*, 898 F.2d 1045,

---

[3]In view of the voluminous record in this case, the Court hereby adopts the recitation of medical evidence, third-party evidence, and testimony from the ALJ's decision and will not restate all of it here. Nevertheless, the Court will incorporate within its analysis evidence from the record it finds pertinent to this decision, including record evidence not mentioned in the ALJ's decision.

1048 (5th Cir. 1990) (claimants bear the burden of establishing a disabling condition before their DLI).

In addition to establishing disability at some point prior to September 30, 2001, Plaintiff must also establish that any such disability continued uninterrupted through the time period covered by his application for Title II disability insurance benefits. *See* 42 U.S.C. § 416(i)(2)(A) ("The term 'period of disability' means a continuous period . . . during which and individual was under a disability . . . ."). Plaintiff has the burden of establishing that any disability which may have existed prior to his DLI also continued uninterrupted into the 12 month period of time preceding his March 2006 application. *See* 42 U.S.C. § 423(b); 20 C.F.R. § 404.691(d) ("You must file an application for a period of disability while you are disabled or no later than 12 months after the month in which your period of disability ended."). Thus, to be eligible for Title II disability insurance benefits, Plaintiff must show (1) that he was disabled prior to September 30, 2001, and (2) that the disability in question continued without interruption through March 2005.

Plaintiff presents five separate assignments of error for this appeal. The Court, however, will address only the two it finds most meritorious under the headings that follow.

### *Plaintiff's Need for a Cane*

Here, Plaintiff argues the ALJ erred in formulating his RFC because it fails to account for his need for a cane. The Court agrees.

The ALJ noted the following with respect to the findings and opinion evidence submitted by Dr. Linda Caldwell:

> In response to medical interrogatories provided in November 2008, Dr. Linda Caldwell provided an opinion of the claimant's physical residual functional

6

> capacity. She reviewed the claimant's medical records in evidence and determined that the claimant could lift and/or carry up to twenty pounds occasionally and ten pounds frequently. She said that he could sit for six hours over the course of an eight-hour day and stand or walk for just two hours over the course of an eight-hour day. She said that he would need a cane to ambulate. She stated that he could only occasionally use his right foot for operation of foot controls. She indicated that he could occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs, but never climb ladders, ropes, and scaffolds. She advised that he should avoid more than occasional operation of a motor vehicle, exposure to pulmonary irritants, extreme heat, or extreme cold (Exhibit 13F).

Tr. 798. The ALJ acknowledged Dr. Caldwell's opinion that Plaintiff, among other things, would need a cane to ambulate and that he could only occasionally use his right foot for operation of foot controls and assigned "great weight" to it. Nevertheless, in formulating the claimant's RFC, the ALJ made no mention of the claimant's need for a cane, or a limited ability to operate foot controls for that matter.

The Court does not find, nor did the Commissioner adequately justify in her brief or during oral argument the ALJ's implicit rejection of Dr. Caldwell's opinions. Indeed, the ALJ gave no explanation in his decision for rejecting the aforementioned portions of Dr. Caldwell's opinion. An ALJ may properly reject all or portions of a physician's opinion when the overall evidence supports a contrary conclusion. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). However, "[a]n administrative law judge may not arbitrarily reject uncontroverted medical testimony." *See Strickland v. Harris*, 615 F.2d 1103, 1110 (5th Cir. 1980). In this case, the ALJ expressly found Dr. Caldwell had reviewed the claimant's medical history and that her opinion was "consistent with the claimant's condition prior to the date last insured" and that the opinion granted "appropriate consideration to subjective complaints as well." Moreover, no other medical opinion or any other evidence pointed to by the ALJ contradicted the limitations found

7

by Dr. Caldwell. *Cf. Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) ("[A]n ALJ may properly rely on a non-examining physician's assessment when . . . those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician."). Therefore, the ALJ's rejection of the said opinion evidence was erroneous and his RFC determination was not supported by substantial evidence.

Consequently, the ALJ's step five determination lacks support of substantial evidence in the record because it was based on the VE's testimony that a person with Plaintiff's RFC– and other characteristics–could perform certain sedentary jobs. *See* Tr. 843-44. No hypothetical proffered by the ALJ to the VE contained the limitation of the need for a cane to ambulate[4] (or a limitation with regard to right foot controls). The Commissioner had the burden at step 5 and has failed to convince this Court that had the VE known of these additional limitations the sedentary job base would not have been significantly eroded. *See* SSR 96-9p (Only when the claimant's ability to perform "the full range of sedentary work is significantly eroded" will a finding of disabled usually apply.).

---

[4]Under the regulations sedentary work involves some degree of lifting and occasional walking and standing may be required:

> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). In this case, no consideration was given to whether and to what extent a hand-held assistive device would impact Plaintiff's need to lift, stand, and/or walk while carrying out job duties.

*Plaintiff's Mental Impairments*

Here, Plaintiff argues, and the Court agrees, that the ALJ did not properly consider Plaintiff's mental impairments in determining his RFC.

To begin, as regards the opinion of Dr. Jane Yates, the ALJ noted the following:

> Jane Yates, Ph.D., provided responses to medical interrogatories in December 2008. She indicated that prior to the date last insured, the claimant had moderate limitation of the ability to perform activities of daily living and to engage in social functioning. She said that his ability to maintain concentration, persistence, and pace during this period was markedly affected.[5] She noted improvement in these areas after September 2006 (Exhibit 14 F).

Tr. 798-99.

As with Dr. Caldwell, the ALJ specifically referenced findings by Dr. Yates in his decision. However, the ALJ afforded only "some" weight to Dr. Yates' opinion because, in the words of the ALJ: "Dr. Yates' opinion goes further than warranted by the treatment records. The claimant showed good response to medical treatment, with GAF scores routinely above the indication of social limitation." The undersigned finds the ALJ's explanation that Dr. Yate's opinion goes beyond what is established by the treatment record is vague and not susceptible to meaningful review. Nevertheless, to the extent the ALJ suggested Dr. Yates' opinion is contrary to other medical evidence, his finding is invalid given the nature of Plaintiff's mental impairments.

As an initial matter, "a claimant whose claim is based on a mental condition does not have to show a 12 month period of impairment unmarred by any symptom-free interval." *See*

---

[5]Dr. Yates opined that the level of interference by Plaintiff's mental impairments with his concentration, persistence, or pace was "marked" from 8/3/96-11/25/05 and "moderate" from 9/25/06 forward. Tr. 711.

9

*Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir. 1986). In this case, though Plaintiff at times had high GAF scores, Dr. Yates had the benefit of, and the record clearly shows, a history of fluctuating GAF scores.[6]

Additionally, the ALJ's determination is undermined by established law in the Fifth Circuit with regard to the impairment of PTSD and with regard to retrospective medical diagnoses. The Fifth Circuit has observed that "'PTSD is an unstable condition that may not manifest itself until well after the stressful event which caused it, and may wax and wane after manifestation.'" *Likes v. Callahan*, 112 F.3d 189, 191 (5th Cir. 1997) (*quoting Jones v. Chater*, 65 F.3d 102, 103 (8th Cir. 1995) ). Accordingly, "[r]etrospective medical diagnoses constitute relevant evidence of pre-expiration disability, and properly corroborated retrospective medical diagnoses can be used to establish disability onset dates." And, lay person evidence may properly corroborate retrospective medical diagnoses. *See generally id.*

In this case, Dr. Yates had the benefit of reports from Plaintiff's VA doctors that indicated Plaintiff received diagnoses of PTSD and major depressive disorder[7] in July 2001– 10 years after service in active combat in the Gulf War–but had previously been diagnosed with major depression in August 1996. Tr. 362. Moreover, VA records indicated, and Dr. Yates concurred, that Plaintiff's PTSD was considered "chronic." *See* Tr. 337. During a medical examination in 2001, Plaintiff complained of anxiety, mood swings, nightmares (almost every

---

[6]The ALJ stated the Plaintiff had GAF scores "through 2001 [that] were almost always at 70 or above with occasional dips to a level suggestive of moderate social limits." The ALJ did not mention, however, that Dr. Yates had noted GAF scores between 50 and 60 as early as 1996 and that Plaintiff had a GAF score of only 50 between February 2001 and February 2002, Tr. 336. Nevertheless, the ALJ acknowledged that as Plaintiff's treatment continued with the VA, "[h]is GAF score was reported at an average of 50 . . . ." For example, in February 2002, Plaintiff was assessed with a GAF of 48, with it being as high as 51 within the past year. Tr. 365.

[7]Plaintiff's Major Depressive Disorder was assessed as "recurrent." *See* Tr. 337.

night), and erratic sleep, among other things. Tr. 948-50. And, during the administrative hearing in 2013, Plaintiff testified he suffered with PTSD symptoms caused by his military experience prior to and after his date last insured. Tr. 824.

Furthermore, as concerns Dr. Yates' finding that Plaintiff suffered "marked"[8] limitation in the areas of "concentration, persistence or pace" between August 1996 and November 2005 (and "moderate" from 9/25/06 forward), the ALJ indicated he did not fully credit Dr. Yates' opinion because Plaintiff "showed good response to medical treatment" and had high GAF scores. Of course, in the portion of his decision where he discussed the severity level of Plaintiff's impairments, the ALJ found Plaintiff had only "mild" difficulties with concentration, persistence or pace. The ALJ reasoned that Plaintiff didn't have serious limitations in this area because he was able to "concentrate sufficiently to attain over ninety credit hours in college." Additionally, during the administrative hearing, the VE testified that a person with Plaintiff's

---

[8]Under the regulations,

> marked . . . means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. § Pt. 404, Subpt. P, App. 1,§ 12.00(C).

Further, it is indicated that:

> [I]f you can complete many simple tasks, we may nevertheless find that you have a marked limitation in concentration, persistence, or pace if you cannot complete these tasks without extra supervision or assistance, or in accordance with quality and accuracy standards, or at a consistent pace without an unreasonable number and length of rest periods, or without undue interruptions or distractions.

*See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1,§ 12.00C(3).

RFC and background, who was "routinely off task for 20 percent of the day" due to lack of sufficient concentration, would not be able to maintain employment. Tr. 844. Following this testimony, the following colloquy between the ALJ and counsel for Plaintiff took place:

> ALJ: . . . Mr. Wilson, have you got any questions for Ms. Holmes?
> ATTY: Kind of hard to put into words, your honor. I saw what you did.
> ALJ: Yeah
> ATTY: And I don't think we could do better than that. I know it's difficult to factor in pain and ability to concentrate, and depression. I think that all plays into it as well.
> ALJ: Right, yeah.
> ATTY: And that may be the 20 percent off task, with a conservative 20 percent, it might be more.
> ALJ: Yeah, I understand that. Twenty percent's enough to eliminate the jobs.
> ATTY: That's exactly–
> ALJ: But you're right, pain can interfere with ability to concentrate. I didn't do the routine, repetitive task thing that I do a lot of times, because there's really just nothing in here to clearly goes down to that. And I don't think Mr. Malone is limited to routine, repetitive tasks. I mean it's not – as far as his ability to concentrate and persist at tasks.
> ATTY: Right.
> ALJ: I don't see that limitation, but I –
> . . .
> ALJ: That was my impression also, yeah. His success in college and all that, shows a lot of persistence too.

To the extent the ALJ felt Plaintiff's "success" in college indicated he had no serious limitations with concentration, persistence, or pace, his opinion is in direct conflict with Dr. Yates.' In formulating a claimant's RFC, the ALJ–a layperson–may not substitute his own judgment for that of a physician. *See West v. Sullivan*, 751 F.Supp. 647, 648 (N.D. Tex. 1990). Nor is an ALJ allowed to "'play doctor' by using [his] own lay opinions to fill evidentiary gaps

in the record. *Suide v. Astrue*, 371 Fed. Appx. 684, 690 (7th Cir. 2010) (internal citation omitted). *See also, Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges must be careful not to succumb the temptation to play doctor . . . . Common sense can mislead; lay intuitions about medical phenomena are often wrong.") (internal citations omitted).

Under the regulations, "concentration, persistence or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit timely and appropriate completion of tasks commonly found in the work setting." 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(C)(3). Additionally, on mental status examinations, concentration is assessed through tasks such as serial sevens or serial threes. "In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits." *Id.* Thus, memory is a consideration in evaluating concentration, persistence, or pace.

In this case, Dr. Yates relied upon voluminous VA records to reach an opinion that Plaintiff had "marked" problems with concentration, persistence, or pace, notwithstanding his enrollment in college. For example, VA records indicated plaintiff experienced "significant short-term memory deficits with difficulties related to retroactive interference" and reported that stress exacerbated his memory problems. Tr. 335-36. Consequently, Plaintiff had to write things down and received considerable help from his mother in keeping track with his day-to-day activities. Tr. 335. Plaintiff memory problems were reported to have begun in 1991 after a grenade injury. Tr. 365-66. Ultimately, Plaintiff received an assessment of having academic

problems and financial problems,[9] among other things. Tr. 333. And, Plaintiff testified that though he had attained 90 credit hours in college (which was presumably close to finishing), he had attended college a couple different times; and, as of July 23, 2013, it had been 9 years since he attended. Tr. 817-18.

The ALJ did not reference any evidence that specifically controverted the existence of Plaintiff's short-term memory limitations. Indeed, though he referenced Plaintiff's college enrollment as an indication of adequate *persistence* and *concentration* during the hearing, he did not include this reasoning in his discussion regarding the weight he assigned to Dr. Yates' opinion. Nevertheless, any reliance by the ALJ upon Plaintiff's college enrollment to rule out serious problems with concentration and persistence–without support from a medical opinion–was erroneous, considering that it appeared that Dr. Yates had considered this evidence along with a wealth of other medical evidence.[10]

Finally, the ALJ gave absolutely no consideration to Dr. Yates' separate finding of short-term memory problems and compromised stress tolerance. Again, VA records indicated psychometric testing in 2002 showed Plaintiff was experiencing "significant short-term memory deficits," Tr. 365, and that in 1998 he had received a service connected 40 percent disability rating for fatigue with memory loss. Tr. 368. And, among other things, Dr. Yates' medical source statement clearly indicated Plaintiff's mental impairments caused moderate problems with regard

---

[9]VA medical records dated March 2002 further showed that while Plaintiff was considered competent to manage his financial affairs, he was encouraged to identify a power of attorney to assist him because of his memory problems. *See* Tr. 336.

[10]The Seventh Circuit has observed that "a person deemed to have problems in concentration, persistence, or pace may have problems with one, two, or all three of those categories." *Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015)(internal quotations omitted). In this case, Dr. Yates' opinion does not exclude either category, yet the ALJ referenced Plaintiff's college enrollment only with respect to concentration and persistence.

to his ability to understand and remember even simple instructions and were probably related to a traumatic brain injury. Furthermore, she gave the following opinion:

> The cl[aimant] lacks the tolerance to sustain frustration and stress tolerance for the effective adaptation to daily work on a consistent basis. He would overreact to frequent changes and could not deal with high-pressured work demands.

Ultimately, Dr. Yates opined that Plaintiff's severe mental impairments, and consequently his inability to work on a consistent basis, were established as early as August 3, 1996. This assessment is corroborated by findings of Plaintiff's VA treaters and testimony of both Plaintiff and his father that Plaintiff exhibited symptoms of PTSD, depression, a memory disorder, and several other mental impairments not later than his date last insured. As such, the ALJ's effective rejection of Dr. Yates' medical opinion was erroneous, and his RFC determination (or decision not to assign mental limitations) is not supported by substantial evidence. The Court finds nothing in this record indicates Dr. Yates' opinion was not based on a careful review of the medical evidence or that is was inconsistent with other medical evidence. Therefore, had Dr. Yates' opinion been properly credited, it would have established overwhelming evidence of disability.

If substantial evidence supports the claimant's position, a court may grant an award of benefits. *See Haynes v. Colvin*, No. 6:12CV00330, 2015 WL 3964783, at *3 (W.D. Tex. June 29, 2015). Moreover, "a judicial award of benefits is proper only where the proof of disability is overwhelming, or where the proof of disability is strong and evidence to the contrary is lacking." *Id*. (quoting *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994)). In this case, there is no substantial evidence to support the denial of benefits. To the contrary, Dr. Yates' opinion–supported by extensive medical records–that Plaintiff could not perform daily work on a sustained basis is overwhelming proof of his disability, which was established as early as August 1996. *See Moisa v. Barnhart*, 367 F.3d 882, 886-887 (9th Cir. 2004) (remanding for award of

benefits where ALJ's opinion was not supported by substantial evidence and where properly credited testimony of plaintiff and unchallenged testimony of VE established that claimant was not capable of performing any work). Moreover, Dr. Yates' opinion coupled with evidence of Plaintiff's need for a cane suggests the sedentary job base would have been significantly eroded. Ultimately, in light of the age and procedural history of this case and the fact that the record enables the Court to determine that Plaintiff is entitled to benefits, remanding it for further administrative proceedings would be unconscionable. *See Randall v. Sullivan, M.D.,* 956 F.2d 105 (5th Cir. 1992) (reversing and awarding benefits in eight-year-old case where the ALJ's decision was not supported by substantial evidence). *See also e.g., York v. Bowen*, 702 F. Supp. 903, 906-908 (N.D. Ga. 1987) (reversing and awarding benefits where treating physician's opinion had not been properly refuted, the ALJ substituted his own conclusions for the opinions of claimant's physicians, and vocational testimony in the record established that claimant would be disabled if the treating opinion were accepted).

For the foregoing reasons, this case is reversed and remanded with instructions to the Commissioner to award benefits for Plaintiff's disability established as of October 30, 1999.

This 3rd day of May, 2016.

/s/ Jane M. Virden  
UNITED STATES MAGISTRATE JUDGE